UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23112-Civ-COOKE/TORRES

EXPORTADORA ATLANTICO, S.A.,

        Plaintiff,

vs.

FRESH QUEST, INC., XELA
ENTERPRISES, LTD., TROPIC
INTERNATIONAL LTD., FRESH
QUEST MELON LLC, AGROEXPORTADORA
MUNDIAL, S.A., ALAN GUTTMANN,
JUAN G. GUTIERREZ, MARK KOROL,
JUAN A. GUTIERREZ, CALVIN SHIELDS
and MARIA BOFILL, each individually,

        Defendants.

_____/

**DEFENDANT ALAN GUTTMANN'S MOTION TO DISMISS COUNTS ONE, TWO
FOUR, FIVE, SIX, SEVEN, EIGHT, NINE, FOURTEEN, AND FIFTEEN OF THE
COMPLAINT WITH INCORPORATED MEMORANDUM IN SUPPORT**

Defendant Alan Guttmann, by and through counsel, respectfully brings this Motion
to Dismiss Counts 1, 2, 4, 5, 6, 7, 8, 9, 14 and 15 of the Complaint against him pursuant to
Fed. R. Civ. P. 12.  As an employee of Defendant Fresh Quest, Inc. ("Fresh Quest"),
Guttmann is not a party to any contract with Plaintiff.  Similarly, as an employee, Guttmann
has no individual liability to Plaintiff under the Perishable Agricultural Commodities Act, 7
U.S.C. §499 *et seq*. ("PACA").  Plaintiff's remaining state law claims against Guttmann are
derivative and/or fail as a matter of law.  For the reasons stated more fully below, the claims
against Guttmann should be dismissed in their entirety.

1

<u>**MEMORANDUM**</u>

## I.   INTRODUCTION

This case arises from a Marketing Agreement and Addendum collectively (the "Agreement") between Plaintiff and Defendant Fresh Quest.  Plaintiff was a Guatemalan grower of melons, and Fresh Quest was a domestic dealer of produce, including melons.  At its most basic, the Agreement was that Fresh Quest would provide literal seed money and funding for other upfront costs, and Plaintiff would exclusively grow melons for Fresh Quest to sell in the U.S.  After sale, Fresh Quest would remit a portion of the proceeds back to Plaintiff.  The Agreement covered three growing seasons.  The Agreement had three provisions significant to the instant matter:

- The parties to the Agreement were Plaintiff and Fresh Quest **only**. Complaint Exhibit 1 (ECF No.1-1), pp. 2, 7, 20.

- An arbitration provision which provides for mandatory, binding arbitration of any dispute arising under the Agreement. *Id*. ¶16.

- A provision that Plaintiff "maintains all PACA rights." *Id*. ¶18.

PACA is a federal statute which governs transactions for the sale of produce at the wholesale level.  Plaintiff alleges violations of the Section 2 "Unfair Conduct" provisions of PACA.  7 U.S.C. §499b.  PACA liability is limited to "commission merchants," "brokers," and "dealers" of produce.  Liability does **not** extend to employees or officers of a produce company.

Throughout the course of the Agreement, Fresh Quest and Plaintiff each alleged that the other had not satisfied its obligations under the Agreement.  Ultimately, Fresh Quest ceased business operations and closed its doors.  Plaintiff subsequently initiated the instant

lawsuit against Fresh Quest, four successor entities/corporate affiliates, and six individuals including Guttmann, who were employees or officers of Fresh Quest or the related entities.

None of the counts of the Complaint state a claim against Guttmann upon which relief can be granted. Accordingly, they should be dismissed pursuant to Fed. Civ. R. 12(b)(6). Counts 1, 2, 4, 5, 6, and 8 are made against all Defendants, and allege breaches of the Agreement and resultant violations of PACA. While these allegations may state a claim against a corporate Defendant, the do not – and cannot – state a claim against Guttmann.

Guttmann was never a party to the Agreement. While he did sign the Agreement on behalf of Fresh Quest, he did so solely in his capacity as President and employee of Fresh Quest, not in his own capacity. The Agreement attached to the Complaint confirms this. Virtually every substantive paragraph of Plaintiff's 322 paragraph Complaint references alleged violations of the Agreement. As a non-party, Guttmann had no duties pursuant to the Agreement, and could not violate or breach the Agreement. None of these allegations states a claim against Guttmann upon which relief can be granted.

Counts 1, 2, 4, 5, 6, and 8 of the Complaint erroneously allege violations of Section 2 of PACA against Guttmann. Section 2 claims can **only** be made against produce commission merchants, brokers, or dealers. *See* 7 U.S.C. §499b(1)-(7). As is readily apparent, and even conceded in the Complaint, Guttmann was an executive and officer of Fresh Quest. Complaint, (ECF No. 1), ¶7(f)["Alan Guttmann (*"Guttmann"*), a Florida resident, is or was an officer, director, or shareholder of [Fresh Quest]."] He was not a produce commission merchant, broker, or dealer. While one or more of the corporate Defendants may be a produce commission merchant, broker, or dealer, Guttmann is not. PACA claims cannot be made against him.

3

Plaintiff's remaining state law claims fail as a matter of law.  Count 7 alleges unjust enrichment, but specifically states that **Fresh Quest** has converted more than $3,000,000.00 and should not be permitted to retain the monies. *Id.* ¶¶274, 278, 279.  Plaintiff cannot obtain relief from **Guttmann** on this claim.  Count 9 alleges intentional interference with contact. Such a claim cannot properly be made against an agent of a corporate party to a contract. *Cedar Hill Properties Corp. v. Eastern Federal Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991). Count 14 alleging conspiracy to defraud fails for a similar reason, as a corporation cannot conspire with its own agents. *Id.*  Finally Count 15, a shotgun claim alleging aiding and abetting, fails.  A corporation can only act through its agents and, as an employee and agent of Fresh Quest, Guttmann cannot be accused of aiding and abetting himself.

Absent any other discernable motive, it appears that the individual Defendants, including Guttmann, were added solely as a means of avoiding the binding arbitration provision of the Agreement.  Such a Complaint is improper.  Because the Complaint fails to state any claim against Guttmann upon which relief can be granted, it should be dismissed in its entirety as to him.

## II.   STATEMENT OF RELEVANT FACTS

Plaintiff is a Guatemalan corporation which produces melons. Complaint, (ECF No. 1), ¶¶1-2.  Fresh Quest was a domestic produce dealer which held U.S. Department of Agriculture ("USDA") PACA License No. 20040551 at all relevant times. *Id.* ¶¶7(a), 12. Guttmann was employed by Fresh Quest as its President. *Id.* ¶7(f).  Any actions taken by Guttmann in this matter were taken in the course and scope of his employment as President of Fresh Quest.  Guttmann was never a commission merchant, broker, or dealer in produce as those terms are defined by PACA.

4

On or about August 15, 2013, Plaintiff and Fresh Quest entered into the Agreement. *Id.* ¶56.  The Agreement stated that Fresh Quest would provide seed money and funding for upfront costs to Plaintiff, and Plaintiff would grow melons exclusively for Fresh Quest to sell in the U.S. *Id.* Exhibit 1.  After sale, Fresh Quest would remit a portion of the proceeds back to Plaintiff.  The Agreement covered three growing seasons. *Id.*  Guttmann was not a party to the Agreement. *Id.*  The Agreement was signed by Guttmann on behalf of Fresh Quest, and only in his capacity as President and employee of Fresh Quest.  The Agreement and the Addendum thereto specifically provide that he is only signing on behalf of Fresh Quest. *Id.* Exhibit 1, pp. 7, 20.  The only parties to the Agreement and Addendum were Plaintiff and Fresh Quest. *Id.* Exhibit 1, p. 2.  The Agreement provided, among other things, for mandatory, binding arbitration in the event of a breach or dispute, and that Plaintiff maintained its PACA rights, if any. *Id.* Exhibit 1, ¶¶ 16, 18.

Plaintiff alleges violations of the Agreement, resultant violation of PACA, and various claims under state law.  Of significance to the instant motion are the following:

- Count 1 against all Defendants alleging a PACA violation for failing to account properly pursuant to the Agreement;

- Count 2 against all Defendants alleging a PACA violation for failing to pay promptly pursuant to the Agreement;

- Count 4 against various Defendants including Guttmann alleging a breach of fiduciary duty under PACA, pursuant to the Agreement;

- Count 5 against all Defendants alleging a PACA violation for failing to truly and accurately account pursuant to the Agreement;

- Count 6 against all Defendants alleging a PACA violation for false or misleading statements pursuant to the Agreement;

- Count 7 against all Defendants alleging unjust enrichment;

5

- Count 8 against all Defendants alleging a PACA violation for breach of the duty of good faith and fair dealing pursuant to the Agreement;

- Count 9 possibly against all Defendants alleging intentional interference with contract (the Agreement);[1]

- Count 14 against all Defendants alleging conspiracy to defraud possibly; and

- Count 15 against all Defendants alleging aiding and abetting possibly.

## III.    LAW AND ARGUMENT

### A. Standard Governing Motions to Dismiss

A claim can only survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the pleading standard of Rule 8(a) does not require "detailed factual allegations," a claim for relief is facially plausible only when it is based on factual allegations sufficient to support a "reasonable inference" that the defendant "is liable for the misconduct alleged." *Id*. At 556; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a claim for purposes of Rule 12(b)(6), the Court should take all well-pled allegations in light most favorable to Plaintiff.  *Rivell v Private Health Care Sys., Inc.,* 520 F. 3d 1308, 1309 (11th Cir.2008).  The court is not, however, "required to accept the labels and legal conclusions in the complaint as true."  *Edwards Prime, Inc.,* 602 F. 3d 1276, 1291 (11th Cir. 2010).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 *quoting Twombly*, 550 U.S. at 555.  "The factual

---

[1] This Count is "possibly" against all Defendants as the Complaint itself is unclear on this point.

allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief." *Fin. Sec. Insurance, Inc. v Stephens, Inc.*, 500 F. 3d 1276, 1280 (11th Cir. 2007).

The Supreme Court in *Iqbal* set forth a two-step process for determining whether a complaint meets the plausibility standard. 556 U.S. at 680-81. First, a Court should identify those allegations which, because they are merely unsupported conclusions, should not be accepted as true. *Id.* at 680. On this score the Court should disregard "[t]hreadbare recitals of the elements of a cause of action" as well as unwarranted deductions of fact, unreasonable inferences, and allegations that are contradicted by exhibits attached to the complaint. *Id.* Second, a Court should assume the truth of the remaining factual allegations, if any, and then determine, by drawing upon "its judicial experience and common sense," whether these factual allegations plausibly give rise to a claim for relief. *Id.* at 681.

**B. Plaintiff is Barred from Alleging that Guttmann Violated the Agreement as he was Not a Party to it and no Duties Thereunder.**

There is no dispute that Guttmann was not a party to the Agreement. The Agreement was between Plaintiff and Fresh Quest. Complaint, Exhibit 1. (ECF No. 1-1), p.2. Guttmann signed the Agreement on behalf of Fresh Quest in his corporate capacity as its President and employee only. *Id.* pp 7, 20. He cannot be personally liable for any alleged violations of the Agreement.

"It is the general rule that an agent acting for a disclosed principal is not personally liable for the debts of the principal." *Schwartz v. Gold Coast Graphics, Inc.*, 623 So.2d 819, 820 (Fla. 4th DCA 1993). The *Schwartz* court reasoned that "unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." *Id.*, quoting The Restatement (Second) of Agency §320

(1958); *see also Otter Valley Foods, Inc. v. Winn Dixie Stores, Inc.*, 2011 WL 3958448 (U.S.D.C. M.D. Fla. Sept. 8, 2011)("Under Florida law, an agent is not liable for a disclosed principal's obligations under a contract that the agent negotiated or executed on behalf of the principal."). Applying this rule to the president of a corporation, the Middle District of Florida found that where an individual signs a contract as "'President' he is not individually liable." *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F.Supp.2d 1350, 1360 (2007).

The bulk of Plaintiff's 322-paragrpah complaint alleges violations of the Agreement. Indeed, of the 10 counts alleged against Guttmann, seven of those specifically reference or allege violations of the Agreement. *See* Counts 1, 2, 4, 5, 6, 8, and 9.  None of these allegations states a claim against Guttmann upon which relief can be granted because he is not a party to the Agreement.  While he signed the agreement on behalf of Fresh Quest, he was acting as an agent of a disclosed principal.  Because Guttmann is not a party to the Agreement, he has no duties thereunder and cannot be liable for an alleged violation thereof.

### C.  Plaintiff is Barred from Asserting PACA Claims Against Guttmann as he is Not a Commission Merchant, Broker, or Dealer Subject to PACA

PACA is defined "to suppress unfair and fraudulent practices in the marketing of perishable agricultural commodities in interstate and foreign commerce." *See* Statutory Preamble, 7 U.S.C. §499.  PACA governs the conduct of, and restricts those subject to liability to, produce brokers, dealers, and commission merchants. 7 U.S.C. §499b.

PACA defines a "commission merchant" as a person "engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. §499a(b)(5).  In other words, a

commission merchant is an independent middle man in a produce transaction who receives a commission when he can connect a willing produce seller and a willing produce buyer.

A "broker" is a person "engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser, respectively." 7 U.S.C. §499a(b)(7).  Thus, a broker is a middle man retained by either the seller or buyer in a produce transaction, who gets paid when he can sell his vendor's load of produce or acquire a load of produce for his buyer.

A "dealer" is a person "engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce," or a person who obtains a U.S. Department of Agriculture PACA License. 7 U.S.C. §499a(b)(6).  While corporate Defendants may be dealers under PACA, Guttmann was **not** a wholesale produce business.  Because Guttmann "did not purchase produce" from Plaintiff, and because "at no point did he own produce," he is not a produce dealer.  *A&J Produce Corp. v. Chang,* 385 F. Supp. 2d 354, 359-60 (S.D.N.Y. 2005).  Furthermore, where, as here, a plaintiff has "failed to offer a scintilla of evidence that [Guttmann] handled 'produce totaling one ton (2,000 pounds) or more in weight in any day,'" it has failed to satisfy the "wholesale or jobbing quantities" requirement. *Id.*, 360; 7 C.F.R § 46.2(x); *see also Val-Land Farms, Inc. v. Third National Bank in Knoxville*, 937 F. 2d 1110, 1116 (6th Cir. 1991) (not a dealer where there is no evidence that a person "ever purchased a single potato, much less purchased potatoes in wholesale or jobbing quantities.").

Plaintiff's PACA claims are made under Section 2, which provides in relevant part that it is a violation:

> For any commission merchant, dealer, or broker to make, for a
> fraudulent purpose, any false or misleading statement in
> connection with any transaction involving any perishable
> agricultural commodity which is received in interstate or foreign
> commerce by such commission merchant, or bought or sold, or
> contracted to be bought or sold, or consigned, in such commerce
> by such dealer, or the purchase or sale of which in such
> commerce is negotiated by such broker; or to fail or refuse truly
> and correctly to account and make full payment promptly in
> respect of any transaction in any such commodity to the person
> with whom such transaction is had; or to fail, without reasonable
> cause, to perform any specification or duty, express or implied,
> arising out of any undertaking in connection with any such
> transaction. 7 U.S.C. §499b(4).

Section 2 of PACA applies to a "commission merchant, dealer, or broker" of produce **only**. 7 U.S.C. §499b(4). As Plaintiff concedes in its Complaint, Guttmann was the President of Fresh Quest Produce, a now defunct produce company. Complaint ¶7(f). Guttmann was not a commission merchant, broker, or dealer of produce, and thus is not subject to PACA. Guttmann did not buy or sell produce on commission or broker produce sales, and he was not a wholesale produce dealer. He was the President of a produce company. That company – not Guttmann – bought and sold produce. That company – not Guttmann – had a USDA PACA License. While Fresh Quest may have been a "dealer" pursuant to PACA, Guttmann was not. Since he is not a commission merchant, broker, or dealer, PACA claims cannot be made against Guttmann.

The bald allegations in the Complaint that Guttmann and the other individual Defendants are commission merchants, brokers, and dealers are insufficient to survive a motion to dismiss. Complaint (ECF No. 1), ¶¶ 9-11. In *Hispanic Farmers and Ranchers of America, Inc. v. De Bruyn Produce Co.*, 2012 WL 4500 438 (U.S. D. C NM, Sept. 20, 2012), the

court faced the precise issue at bar, and granting that individual defendant's motion to dismiss reasoned:

> The Complaint is devoid of any allegation that Ms. DeBruyn was engaged, individually, in the business of receiving, buying or selling, or negotiating sales and purchases of perishable agricultural commodities.   Under *Iqbal,* Plaintiff's naked assertion that Ms. DeBruyn is a person covered by PACA, without any further factual enhancement, is insufficient to state a claim against her that is plausible on its face.  *Id.*\*2.

The rule from *Hispanic Farmers* is directly applicable in this case.  Guttmann's Motion should be granted.

### D. Because Guttmann is Not a Party to the Marketing Agreement or Subject to PACA, Counts 1, 2, 5, 6, and 8 of the Complaint Should Be Dismissed as to Him

Counts 1 (failure to account promptly), 2 (failure to pay promptly), 5 (failure to truly and accurately account), 6 (false or misleading statements), and 8 (breach of good faith and fair dealing) all allege breaches of the Agreement and resultant violations of PACA.  As discussed above, these claims are improper as to Guttmann because he is not a party to the Agreement and therefore cannot breach it, and because he is not subject to PACA and therefore cannot violate it.   Plaintiff attempts to circumvent this obvious failing by baldly alleging that Guttmann and every other Defendant in this action is a commission merchant, dealer, and broker.  Complaint, ¶¶ 9-11.  In support of these allegations, Plaintiff simply recites that statutory definitions of these terms.  These are precisely the types of "threadbare recitals" which *Iqbal* prohibits.  The factual allegations in these counts are equally baseless and do not set forth plausible claims against Guttmann upon which relief can be granted.

Count 1 alleges that all Defendants, including Guttmann, failed to account promptly to Plaintiff.  In support of this claim, Plaintiff cites duties under the Agreement which were

allegedly violated. *See* e.g. Complaint ¶¶179, 180, 183-185.  Count 1 then makes the conclusory allegation that "the matters and actions alleged in this Count 1 constitute a violation by Defendants of Section 2 of PACA." *Id.,* ¶191.  Such claims fail **as to Guttmann** because he is not a party to the Agreement and not subject to PACA.  Counts 2, 5, 6, and 8 suffer from the same fatal flaws as Count 1.  For example, Count 2 alleges a failure to promptly pay for produce pursuant to the Agreement, with the threadbare allegation that "the matters and actions or inactions alleged in this Count II constitute violations by Defendants of Section 2 of the PACA." Complaint, ¶201.  Count 5 alleges a failure to truly and accurately account to Plaintiff pursuant to the Agreement, and makes the conclusory allegation that "Defendants' failure or refusal to provide Plaintiff with true and correct accounting of its sales performance constitutes a violation by Defendants of Section 2 of the PACA." *Id.*, 255. Count 6 alleges false or misleading statements pursuant to the Agreement, and the bald statement that "the foregoing actions of Defendants constitute unfair conduct under PACA." *Id.*, 271.  Finally, Count 8 alleges a breach of good faith and fair dealing under the Agreement and contains the threadbare statement that "as a PACA licensee [which Guttmann **is not**] and dealer or broker of Produce, Defendants possessed a statutory duty to deal with Plaintiff pursuant to a standard of honesty in fact and was further obligated to observe commercial standards of fair dealing in the Produce trade which is defined, inter alia, in Section 2 of PACA." *Id.*, ¶283.

None of these counts state a claim against Guttmann upon which relief can be granted. He has no liability under the Agreement because he is not a party to it and could not have violated it.  He is not subject to Section 2 of PACA because he is not a commission merchant, broker or dealer.  These counts as to Guttmann are precisely the type of bare, conclusory

claims that Fed. R. Civ. P. 8, *Twombly*, *Iqbal,* and their progeny seek to eliminate. Counts 1, 2, 5, 6, and 8 should be dismissed in their entirety as to Guttmann.

### E. Count 4 Alleging Breach of Fiduciary Duty Fails to State a Claim Against Guttmann as he owes Plaintiff no Duty

While Count 4 should be dismissed for the same reasons as Counts 1, 2, 5, 6, and 8, there are additional reasons that this breach of fiduciary duty claim should be dismissed.

The most critical element of a breach of fiduciary duty claim is the "existence of a fiduciary duty." *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). Such a duty has been found to exist in the context of a mental health therapist and patient, physician and patient, officer to his corporation, or in banking relationships. *Id.* Absent evidence that an entity recognized, accepted, or undertook the duties of a fiduciary, such a relationship is not assumed. *Lanz v. Resolution Trust Corp.*, 764 F.Supp. 176, 179 (S.D.Fla. 1991). Here, Guttmann has no such relationship to Plaintiff. He had no position of authority or superior knowledge sufficient to create a fiduciary duty in him to Plaintiff. Indeed, Guttmann owes Plaintiff no duty at all — fiduciary or otherwise— as he is not an employee or agent of Plaintiff, and is not a party to the Agreement or any other contract with Plaintiff.

Similarly, nothing in Section 2 of PACA creates a fiduciary relationship between Plaintiff and Guttmann. Plaintiff alleges without citation that Guttmann has a statutory duty under PACA to "ensure [Fresh Quest's] compliance with its obligations to Plaintiff," and to exercise "control over [Fresh Quest's] operations and its financial dealings." Complaint, ¶¶228-29. No provision of Section 2 of PACA creates such fiduciary duties for Guttmann. These are the prohibited "defendant-unlawfully-harmed-me" allegations which *Twombly and Iqbal* mandate should be dismissed.

It should be noted that Section 5 of PACA creates a statutory trust under which, in limited circumstances, fiduciary duties can arise between produce dears, brokers, and commission merchants.   Any such claim fails here for three reasons.   First, and most importantly, no Section 5 breach of trust claims are pled in Plaintiff's Complaint.   Second, Guttmann is not a dealer, broker, or commission merchant and thus has no fiduciary duties (or any other duties) under any section of PACA.   Finally, a trust claim can only arise where the payment terms for a shipment of produce are 30 days or less. 7 C.F.R.  46.46(e)(2). Plaintiff concedes in its Complaint that its payment terms with Fresh Quest were "45 days after the products arrival." Complaint, ¶100.  Thus, there can be no PACA trust claim.  Count 4 is an attempted end-run around these clear limits on fiduciary duty claims under PACA. Invalid claims pursuant to an inapplicable statute do not "possess enough heft to set forth a plausible entitlement to relief," and should be dismissed. *Fin. Sec. Assurance, Inc., Supra.*

### F. Count 7 Alleging Unjust Enrichment Does Not State a Claim Against Guttmann

The allegations in Plaintiff's own Complaint confirm that if anyone has been unjustly enriched in this matter, it is Fresh Quest and not Guttmann. Complaint ¶¶ 274, 278, 279.  As Guttmann has not been enriched, it follows that he has not been unjustly enriched.  Moreover, as Plaintiff has pled the existence of the Agreement, and no party has disputed its validity, a claim for unjust enrichment fails as a matter of law. *Wilson v. EverBank N.A.*, 77 F.Supp.3d 1202, 1220 (S.D. Fla. 2015)("unjust enrichment many only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid."); *see also Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F.Supp.2d 1311, 1317 (S.D. Fla. 2011)("as there is a valid express contract that no party

14

challenges, plaintiff may not recover under unjust enrichment, and many not assert it as an alternative claim under Federal Rule 18.").

The elements of a claim for unjust enrichment are (1) plaintiff conferred a benefit on the defendant; (2) defendant accepts and retains the benefit conferred; and (3) circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof. *Fito v. Attorneys' Title Ins. Fund, Inc.*, 83 So.3d 755, 758 (Fla. 3d DCA 2011). While ostensibly pled against all Defendants, the actual allegations in Count 7 are directed at Fresh Quest only. Plaintiff alleges that Fresh Quest "has converted, or is now in the process of converting, to its own use and benefit, certain monies valued in excess of $3,000,000.00," and that "Plaintiff sold and delivered Produce to [Fresh Quest], and [Fresh Quest] received and resold said Produce." Complaint, ¶¶274-75. Plaintiff goes on to allege that "no just cause exists in law or equity for [Fresh Quest] to receive or retain any portion of the funds [Fresh Quest] has failed to report and pay to Plaintiff," and that "No just cause exists in law or equity for [Fresh Quest] to receive or retain any portion of the funds [Fresh Quest] improperly deducted or withheld from Plaintiff." *Id.*, ¶¶278-79.

Plaintiff is alleging that Fresh Quest, and not Guttmann, was unjustly enriched. Plaintiff cannot satisfy the first element of an unjust enrichment claim against Guttmann. To the extent any benefit was conferred, it was conferred upon Fresh Quest, not Guttmann. To the extent any benefit was retained, it was retained by Fresh Quest and not Guttmann. The unjust enrichment claim against Guttmann should be dismissed.

### G. Count 9 Alleging Intentional Interference with Contract Fails as a Matter of Law

"In order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract by influencing, inducing, or coercing one of the parties to breach the contract, thereby causing injury to the other party. An agent of a corporate party to a contract, acting within his capacity and scope as an agent, cannot be considered to be a separate entity outside of the contractual relationship which can tortiously interfere with that relationship." *Cedar Hill Properties Corp. v. Eastern Federal Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991); *see also West v. Troelstrup*, 367 So.2d 253, 255 (Fla. 1st DCA 1979); *Abruzzo v. Haller*, 603 So.2d 1338, 1339-40 (Fla. 1st DCA 1992).

Here, Plaintiff concedes that Guttmann was the President of Fresh Quest "at all times relevant" and thus its agent. Complaint, ECF No. 1), ¶7(f).  Guttmann signed the Agreement as an agent of Fresh Quest.  Complaint, *Id.*  As an agent of Fresh Quest, Guttmann cannot be considered a separate entity which can tortiously interfere with Plaintiff's contract.  Count 9 fails as a matter of law and should be dismissed.

### H. Count 14 Alleging Conspiracy to Defraud Fails as a Matter of Law

A conspiracy requires the combination of two or more persons – a meeting of two independent minds intent on one purpose. *Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So.2d 1025 (Fla. 3rd DCA 1981).  "Since a corporation is a legal entity which can only act through its agents, officers, and employees, a corporation cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest." *Cedar Hills Properties Corp., supra,* 575 So.2d at 676; *Bucker, supra*;

16

*American Credit Card Tel Co. v. Nat'l Pay Tel. Corp.*, 504 So.2d 486 (Fla. 1ˢᵗ DCA 1987); *Garrido v. Burger King Corp.*, 558 So.2d 79 (Fla. 3ʳᵈ DCA 1990).

Again, Plaintiff concedes that Guttmann was at all times relevant the President of Fresh Quest and thus its agent. Complaint, (ECF No. 1),¶7(f).  As a corporation can only act through is agents, to the extent the Plaintiff is alleging Guttmann conspired with other employees, officers, and agents of Fresh Quest, Plaintiff is alleging that he conspired with Fresh Quest.  Fresh Quest cannot conspire with its own agent, Guttmann.  Because Guttmann by law could not have conspired to defraud Plaintiff on its contract with Fresh Quest, this Count should be dismissed.

## I.  Count 15 Alleging Aiding and Abetting is Contradictory and Should Be Dismissed

To support a claim for civil aiding and abetting, Plaintiff must show:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation. *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute and Shareholder Derivative Litigation*, 690 F.Supp.2d 1296, 1310 (S.D. Fla. 2010).

As the name and the first element make clear, to be liable a defendant must be aiding another party.  Here, Plaintiff alleges that the "Principals" are aiding Fresh Quest's "directors and officers."  Complaint, (ECF No. 1), ¶321.  "Principals" is a defined term in Plaintiff's Complaint which includes Guttmann and the other officers of Fresh Quest.  *Id.*, ¶7(f).  The same Defendants are the "directors" or "officers" of Fresh Quest.  *Id.*  Count 15 alleges that

these Defendants aided and abetted themselves.  Such a contradictory allegation should be dismissed.

Moreover, the allegations in this count are nothing more than a threadbare recital of the elements of an aiding and abetting claim.  The Complaint does not identify with any particularity which fiduciary duties were allegedly violated, by whom, or who specifically aided or abetted which tortfeasor.  Where a complaint "refers to the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct," it should be dismissed. *Kabbaj v. Obama*, 568 Fed.Appx. 875, 880 (11th Cir. 2014).  Such bald allegations violate the pleading standard promulgated by the Supreme Court in *Twombly* and *Iqbal* and are improper.

## IV.   CONCLUSION

To survive a motion to dismiss, a claim must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, *Supra*, 550 U.S. at 570.  None of the claims in Plaintiff's Complaint state a plausible claim against Guttmann.  He has no liability to Plaintiff under the Agreement, as he is not a party to it.  He has no liability to Plaintiff under PACA as he is not a commission merchant, broker, or dealer of produce.  Plaintiff's remaining state law claims are either invalid or contradictory.  Put simply, Guttmann is not a proper Defendant in this matter, and should not be forced to defend Plaintiff's meritless claims just so that Plaintiff can side-step the mandatory arbitration provision of its own contract with Fresh Quest.

Wherefore, Defendant Alan Guttmann respectfully requests this Court dismiss each count of the Complaint against him in its entirety.

Respectfully submitted,

LAW FIRM OF CHRISTOPHER G. PRICE, P.A.

By:    */s/ Christopher G. Price*
       Christopher G. Price
       Fla. Bar No.: 0014622
       999 Vanderbilt Beach Road
       Suite 200
       Naples, Florida 34108
       Telephone:    (239) 325-5008
       Facsimile:    (239) 561-3726
       Email:        cprice@cgplawfirm.com
       *Local Counsel for Defendant Alan Guttmann*

       and

       Ryan M. Gembala*
       O'TOOLE, McLAUGHLIN, DOOLEY
       & PECORA CO., LPA
       5455 Detroit Road
       Sheffield Village, Ohio 44054
       Telephone: 440-930-4001
       Facsimile: 440-934-7205
       Email: rgembala@omdplaw.com
       *Lead Counsel for Defendant Alan Guttmann*
       *Pro Hac Vice application to be filed*

19