UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| EXPORTADORA ATLANTICO, S.A.<br><br>    Plaintiff,<br><br>v.<br><br>FRESH QUEST,INC.,<br>XELA ENTERPRISES,LTD.,<br>TROPIC INTERNATIONAL,LTD.,<br>FRESH QUEST MELON, LLC,<br>AGROEXPORTADORA MUNDIAL, S.A.,<br>ALAN GUTTMAN, JUAN G. GUITERREZ,<br>MARK KOROL, JUAN A GUTIERREZ,<br>CALVIN K SHIELDS<br><br>    Defendants. | Civil Action No.: |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
ALAN GUTTMAN'S MOTION TO DISMISS**

Exportadora Atlantico, S.A. ("Exportadora" or "*Plaintiff*"), by and through its undersigned counsel, respectfully submits its opposition to Defendant Alan Guttman's Motion to Dismiss [D.E. # 16] and states as follows:

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997). In reviewing a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon v. Page*, 291 F.3d 485, 486–87 (7th Cir.2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the

claim's basis but must also establish that the requested relief is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555.

Against this standard, taking as true all well-pleaded factual allegations and all reasonable inferences which may be drawn from those factual allegations, Defendant's motion to dismiss should be denied.

## ARGUMENT

**I.     Contrary to Defendant's Assertions, Defendant is Personally Liable to Plaintiff for Violations of the Perishable Agricultural Commodities Act and More.**

### A. PACA Liability Exists Even When No Trust is Established.

Key to understanding and applying PACA is the fact that "PACA provides for both a damages remedy and (an entirely separate) trust remedy." *C&G Farms, Inc. v. Capstone Business Credit, LLC*, 2011 U.S. Dist. LEXIS 25986 *30-31 (citing 7 U.S.C. § 499e(a) and (b)). "Accordingly, certain conduct by commission merchants, dealers, or brokers is declared to be **unlawful**." *Id.* (citing 7 U.S.C. § 499b)(emphasis added). "Unlawful conduct subjects the violator to **damages**" (pursuant to 7 U.S.C. § 499b). *Id.* (citing 7 U.S.C. § 499e(a)('he shall be liable to the person or persons injured thereby for the full amount of the damages.')(emphasis added).

"The Damages remedy and the trust remedy are **distinct remedies**. The PACA damages provisions and the statutory trust are **different statutory schemes**. The PACA provisions for unlawful conduct, pursuant to 7 U.S.C. § 499b, and the PACA provisions for a statutory trust, pursuant to 7 U.S.C. § 499e(c)(2), are **two different statutory schemes that do not apply to or**

**interrelate to one another**." *Id.* (citing *Onions Etc., Inc. v. Z&S Fresh, Inc.*, 2010 U.S. Dist. LEXIS 64047 (E.D. Cal. 2010)(emphasis added). The foregoing is evidenced by, *inter alia*, the fact that Congress enacted PACA in 1930 to protect growers from unlawful conduct and to subject the violators to civil liabilities in the form of damages. Fifty-four years later, in 1984 Congress amended PACA to **add a new subsection** (c) to section 5.

Congress enacted the PACA in 1930 to provide a comprehensive scheme for the regulation of traders of fresh fruit and vegetables and

> to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in marketing of fresh and frozen fruits and vegetables . . . and providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations.

H. R. Rep. No. 543, 98th Cong. 2d Sess. 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. Stated another way, the PACA "provides a code of fair play . . . and an aid to agricultural traders in enforcing their contracts." 49 Fed. Reg. at 45737. The PACA makes it **unlawful** for produce buyers, *inter alia*, to:

- Fail to make full payment promptly for any produce they purchase.

- Fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such [produce purchase].

- Fail to maintain the trust as required under section 5(c) 7 U.S.C. § 499b(4).

- Fail to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation[1] of trust assets, is unlawful and in violation of section 2 of the Act, [7 U.S.C. 499b].

7 C.F.R. 46.46(d)(1)

Importantly, the foregoing represents four specific examples of **unlawful conduct** that violates PACA and subjects the violator to damages, which would be quantified utilizing, *inter*

---

[1] "'Dissipation' means any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).

*alia*, the produce sellers' allegedly unpaid invoices. However, these same PACA violations DO NOT constitute trust violations. Rather, "if any commission merchant, dealer, or broker **violates any provision of section 2 [7 U.S.C. § 499b]** he shall be liable to the person or persons injured thereby for the full amount of the damages sustained in consequence of such violation. Such liability may be enforced either (1) by complaint to the Secretary… or (2) by suit in any court of competent jurisdiction."  7 U.S.C. § 499e(a) and (b)(emphasis added).

In this case, Alan Guttman ("*Defendant*") does not argue that Fresh Quest, Inc. ("*Fresh Quest*" or "*FQI*") was not a dealer of perishable agricultural commodities ("*Produce*") and the holder of a USDA issued PACA license. Rather, Defendant concedes and admits to the same. [D.E. #16, pg. 4]  Notwithstanding the above, Defendant argues that he does not personally qualify as a commission merchant, dealer, or broker of Produce and is due to be dismissed from the above styled civil action. The Defendant's argument misstates the issue because the question is not whether Defendant himself is a commission merchant, dealer, or broker of Produce, but rather whether Defendant is personally liable to Plaintiff for the allegations, claims, and causes of action set forth in the Complaint [D.E. #1].

### B. Fresh Quest's Insolvency, Inter Alia, Establishes a Basis for Defendant's Personal Liability to Plaintiff.

Generally, an officer or director owes fiduciary duties exclusively to the corporation's shareholders. When a corporation becomes insolvent, however, the officer or director's fiduciary duties shift to the creditors of the corporation. *Guaranty Trust & Savings Bank v. United States Trust Co.,* 89 Fla. 324, 103 So. 620, 622 (1925) ["The directors ... of an insolvent corporation occupy toward the creditors of the corporation a fiduciary relation ...."]. *See also Federal Deposit \*167 Insurance Corp. v. Sea Pines Co.,* 692 F.2d 973, 976–77 (4th Cir.1982) [when a corporation becomes insolvent, "the fiduciary duty of the directors shifts from the stockholders

to creditors"]; *Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims (In re Papercraft Corp.),* 211 B.R. 813, 824 (W.D.Pa.1997) [upon insolvency fiduciary duty of insider extended to creditors]; *Brandt v. Hicks, Muse & Co. (In re Healthco International, Inc.),* 208 B.R. 288, 300 (Bankr.D.Mass.1997) ["When a transaction renders a corporation insolvent, or brings it to the brink of insolvency, the rights of creditors become paramount."]; *Geyer v. Ingersoll Publications Co.,* 621 A.2d 784, 787–88 (Del.Ch.1992) ["[T]he fact of insolvency ... causes the duty to creditors [to] arise"]. The shift in fiduciary duties from the shareholders to the creditors that occurs upon the insolvency of the corporation is sometimes referred to as the "insolvency exception."

Under applicable Florida corporate law, a director must perform his or her corporate duties (1) in good faith; (2) with such care as an ordinary prudent person in a like position would exercise under similar circumstances; and (3) in a manner the director reasonably believes to be in the best interests of the corporation. *In re Trafford Distrib. Ctr., Inc.*, 431 B.R. 263, 290 (Bankr. S.D. Fla. 2010). Under Florida law, corporate officers and directors owe duties of loyalty and a duty of care to the corporation. *Id.* **The fiduciary duties of officers and directors are extended to the creditors of a corporation when the corporation becomes insolvent or is in the "vicinity of insolvency."** *(emphasis added).* To permit corporate officers and director "to use their fiduciary positions to obtain preferential treatment at the expense of third-party creditors is manifestly unfair." *Id.* As a result, "[a] corporate officer or director breaches the duty of loyalty if that person 'depart[s] from his corporate responsibility and start[s] serving himself.' " *Id.* A fiduciary who commits a breach of her duty as a fiduciary is guilty of tortious conduct, and the wronged party is entitled to tort damages for harm caused by the breach of duty. *Id.*

Florida law has long recognized that corporate officers and directors owe duties of loyalty and a duty of care to the corporation. *See Cohen v. Hattaway,* 595 So.2d 105 (Fla. 5th Dist.Ct.App.1992); *B & J Holding Corp. v. Weiss,* 353 So.2d 141 (Fla. 3rd Dist.Ct.App.1978). **An officer's or director's fiduciary duties are extended to the creditors of a corporation when the corporation becomes insolvent or is in the "vicinity of insolvency".** *See Toy King Distributors, Inc.,* 256 B.R. 1 (Bankr.M.D.Fla.2000) (emphasis added). A corporate officer or director breaches the duty of loyalty if that person "depart[s] from his corporate responsibility and start[s] serving himself." *Intercarga Internacional de Carga, S.A. v. Harper Group, Inc.,* 659 So.2d 1208, 1210 (Fla. 3rd Dist.Ct.App.1995).

Via Declaration of Mark Korol, CFO for Fresh Quest, Inc., dated June 22, 2016 and filed in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade Country, Florida in case number 2015-025844-CA-24, Fresh Quest admitted and affirmed the following, in relevant part, under penalty of perjury:

> During Mr. Guttman's tenure as President of FQI since 2012, the company and its operating divisions indirectly lost over $10 million. Due to his gross mismanagement, FQI missed every single budget and was exposed to substantial third party liability, including liability to suppliers for his mishandling of trust fund proceeds under the Perishable Agricultural Commodities Act ("PACA"). Indeed, because of this mishandling, he was very concerned about his own potential individual liability under PACA. As such, there is no doubt Mr. Guttman knew that as of mid-October 2015, **FQI was insolvent**, that he was directly responsible for creating this insolvency….

*See* Declaration of Mark Korol at ¶ 8 (emphasis added), a true and correct copy of which is attached hereto as <u>Exhibit A</u>. In light of the above, there is no question that at all time relevant Fresh Quest was insolvent and this fact was known to both Defendant and others within the organization. Fresh Quest's insolvency alone required Defendant to exercise due care in the supervision and management of the company and the performance of his duties for the benefit of Fresh Quest's creditors, such as Plaintiff herein. *See Fla. Stat.* § 607.0830(1). This fact is

bolstered by Defendant's admission that "a corporation can only act through its agents" [D.E. # 16, pg. 4] and that he was the "President and employee" of Fresh Quest.  [D.E. # 16, pg. 7].

## II.     Plaintiff Properly Included Defendant as a Party to the Above Styled Case

Plaintiff invested the time and effort into preparing a 57 page detailed complaint with 322 separate allegations providing great detail about Defendant's: (i) role in this case, (ii) position within Fresh Quest, (iii) relationship with Plaintiff, and; (iv) the various duties and obligations of the parties hereto.  There is nothing threadbare about Plaintiff's allegations against Defendant. Indeed, even the Defendant does not argue that Plaintiff's Complaint fails to properly place him on fair notice regarding Plaintiff's claims, but rather appears to challenge only the plausibility of any of the claims contained in Counts 1, 2, 4, 5, 6, 7, 8, 9, 14 and 15 attaching to Defendant personally.

Again, Defendant is wrong.  Fresh Quest's admitted insolvency (e.g., the company lost $10 million dollars since Guttman's took over as president due to his gross mismanagement and Guttman knew the company was insolvent. *See* Exhibit A) coupled with the fact that Defendant served as president of Fresh Quest, executed the contracts at issue in the complaint, and served as Plaintiff' main point of contact at Fresh Quest places Defendant in a vulnerable position.  Stated another way, Defendant cannot grossly mismanage Fresh Quest to the point of insolvency and then seek to avoid any liability to its creditors, such as Plaintiff herein, by hiding behind the very entity he lead to ruin and citing generic principles of agency law.  The foregoing ignores well established Florida law and jurisprudence.

As set forth in the Complaint, Defendant was personally involved in or was otherwise responsible for every alleged breach of contract, breach of statutory duty, breach of fiduciary duty, and tort injury suffered by Plaintiff as alleged in Counts 1, 2, 4, 5, 6, 7, 8, 9, 14 and 15 of

the Complaint. Armed with knowledge of Fresh Quest's actual insolvency and prior pending insolvency (i.e., vicinity of insolvency), Defendant owed Plaintiff a duty of loyalty and stood in a fiduciary capacity with respect to Plaintiff. As a fiduciary of Plaintiff, Defendant is absolutely a proper party to the above styled civil action and Florida law is very clear that the fiduciary duties of officers to their corporations are extended to creditors of insolvent corporations.

As a direct result of the above, it is more than plausible that Defendant is in fact personally liable to Plaintiff for the claims, injuries, and damages alleged in Counts 1, 2, 4, 5, 6, 7, 8, 9, 14 and 15 of the Complaint. Moreover, this Honorable Court should not permit Defendant to grossly mismanage Fresh Quest to the point of insolvency and avoid any personal responsibility to those creditors he victimized. More than enough facts exist to fairly place Defendant on notice of the claims against him and Fresh Quest's admitted insolvency makes it more than plausible that Defendant is in fact personally liable to Plaintiff. Because all of Defendant's challenges to Plaintiff's Complaint are based on the assumption that Defendant owes no duties to Plaintiff they each must fail under a motion to dismiss standard.

**WHEREFORE**, Plaintiff respectfully requests Defendant's Motion to Dismiss [D.E. #16] be denied in its entirety.

Dated: October 4, 2016                    Respectfully submitted,

**EXPORTADORA ATLANTICO, S.A.**

/**s**/ Drew M. Dillworth, Esq.

STEARNS WEAVER MILLER et al.
150 West Flager Street
Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3598
Facsimile: (305) 789-3395
E-mail: ddillworth@stearnsweaver.com

**Of Counsel:**

Jason R. Klinowski, Esq.
   (*Pro Hac Vice* application forthcoming)
WALLACE JORDAN RATLIFF
& BRANDT LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 300
Birmingham, Alabama 35209
Telephone:  (205) 874-0371
Facsimile:   (205) 874-3287
E-mail: jklinowski@wallacejordan.com

## CERTIFICATE OF SERVICE

     I hereby certify that on October 4, 2016, the undersigned counsel for the Plaintiff caused a true and correct copy of the foregoing, including all notices and exhibits thereto, if any, to be served upon all counsel of record, via the Court's CM/ECF system.

     /s/ Drew M. Dillworth, Esq.

     STEARNS WEAVER MILLER et al.
     150 West Flager Street
     Suite 2200
     Miami, Florida 33130
     Telephone: (305) 789-3598
     Facsimile: (305) 789-3395
     E-mail: ddillworth@stearnsweaver.com
     *Local Counsel for the Plaintiff*