UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-23112-MGC

EXPORTADORA ATLANTICO, S.A.,

    Plaintiff,

v.

FRESH QUEST, INC., XELA ENTERPRISES, LTD.,
TROPIC INTERNATIONAL, LTD., FRESH QUEST
MELON, LLC, AGROEXPORTADORA MUNDIAL, S.A.,
ALAN GUTTMAN, JUAN G. GUTIERREZ, MARK
KOROL, JUAN A. GUTIERREZ, CALVIN K. SHIELDS,
and MARIA BOFILL, each individually,

    Defendants.

_____/

**DEFENDANT CALVIN SHIELDS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT[1]**

Defendant Calvin Shields ("Shields"), by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and S.D. Fla. L.R. 7.1(a)(1), hereby moves for the entry of an order dismissing Counts I, II, IV, V, VI, VII, VIII, IX, XIV and XV of the Complaint (D.E. 1) as to him or, alternatively, requests a more definite statement pursuant to Fed. R. Civ. P. 12(e). In support of his motion, Shields states:

**INTRODUCTION**

This lawsuit arises from a contractual dispute between Plaintiff Exportadora Atlantico, S.A. ("Plaintiff") and Defendant Fresh Quest, Inc. ("Fresh Quest"). Plaintiff is a grower of

---

[1] Defendant Calvin Shields hereby joins in, adopts, and incorporates by reference the arguments raised in the Motion to Dismiss and incorporated Memorandum of Law filed by Alan Guttmann on September 6, 2016 (D.E. 16).

1

cantaloupe and honeydew melons in Guatemala. Pursuant to the terms of an agreement between Plaintiff and Fresh Quest, Fresh Quest became Plaintiff's distributor of melons in the United States. Throughout the course of their agreement, Plaintiff and Fresh Quest each alleged that the other had breached the terms of their agreement.

Ultimately, Plaintiff initiated the instant lawsuit against Fresh Quest, alleging various contractual breaches. In the same lawsuit, Plaintiff also sued four of Fresh Quest's purported related entities (the "Related Entities") and six individuals who were allegedly employees, officers, directors and/or agents of Fresh Quest or the Related Entities. These additional defendants were sued, along with Fresh Quest, for violations of various state laws and for violations of the Perishable Agricultural Commodities Act ("PACA").

Shields is one of the individuals who was named in the lawsuit. Notably, Plaintiff has sued under Unfair Conduct provisions of the PACA, 7 U.S.C. § 499b, rather than the PACA Trust provisions of 7 U.S.C § 499e. The Unfair Conduct provisions, unlike the PACA Trust provisions, do not create liability for shareholders, directors and officers of a corporation. Accordingly, the claims against Shields as an individual, which are set forth in Counts I, II, IV, V, VI, VII, VIII, IX, XIV and XV of the Complaint, are improperly raised against him and/or are otherwise legally insufficient. For reasons that are more fully explained below, all the allegations against Shields should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and S.D. Fla. L.R. 7.1(a)(1). In the alternative, Plaintiff should be required to amend the Complaint to provide Shields, and the other defendants, with a more definite statement pursuant to Fed. R. Civ. P. 12(e).

## STATEMENT OF FACTS

As is alleged in the Complaint, Plaintiff is a Guatemalan corporation with farming operations in Asunción Mita, Guatemala. *See* Compl. ¶¶ 1-2. Plaintiff raises honeydew melon and cantaloupe (the "Produce") for marketing and sale in the United States. *See id*. On or about August 15, 2013, Plaintiff and Fresh Quest entered into an exclusive marketing agreement (the "Agreement"), according to which Plaintiff agreed to sell the Produce to Fresh Quest, and Fresh Quest agreed to purchase the Produce from Plaintiff, for a period of three years. *See* Compl. ¶¶ 56, 59. On or about September 16, 2014, Fresh Quest executed an addendum to the Agreement (the "Addendum"), which set forth additional terms relating to the parties' performance under the Agreement during the 2014-2015 growing season. *See* Compl. ¶ 57. The Agreement and the Addendum are collectively referred to as the "Marketing Agreement."

According to the Complaint, the Marketing Agreement created two separate and distinct relationships between Plaintiff and Fresh Quest. *See* Compl. ¶ 74. The first relationship was one of purchaser and seller. *See* Compl. ¶ 75. The other relationship was one in which Fresh Quest would initially procure, secure, schedule, and provide certain freight and transportation-related services for Plaintiff and Plaintiff would pay for those services as a deduction from the proceeds it would receive from sales of the Produce. *See* Compl. ¶ 76.

## MEMORANDUM OF LAW

### I. LEGAL STANDARD

#### a. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), "[d]ismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. Dismissal is therefore permitted 'when on the basis of a dispositive issue of law, no construction of the

factual allegations will support the cause of action.'" *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal citations omitted). "Although for the purposes of a motion to dismiss [the court] must take all of the factual allegations as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). Therefore, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Therefore, Plaintiff is obligated to sufficiently state the grounds for which it is entitled to relief, and the Complaint must contain enough facts to state a claim for relief that is plausible on its face. *Id.* at 547.

    b. **Motion for More Definite Statement**

Federal Rule of Civil Procedure 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." The motion must address the defects of the pleading and explain the details desired. *Id.* Consequently, if a pleading "fails to specify the allegations in a manner that provides sufficient notice" or does not contain sufficient information to allow for a proper responsive pleading to be framed, the Court should require a more definite statement be provided as to each specific claim. *See Sisk v. Texas Parks and Wildlife Dep't*, 644 So. 2d 1056, 1059 (5th Cir. 1981).

    II. **ALL CLAIMS AGAINST SHIELDS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT STATED A CAUSE OF ACTION AGAINST HIM.**

At bottom, this lawsuit is nothing more than a contractual dispute between Plaintiff and Fresh Quest. Plaintiff, however, has attempted to bolster its lawsuit, in Counts I, II, IV, V, VI,

4

VII, VIII, IX, XIV and XV, with claims against individuals who are (or were) employees, officers, directors or agents of Fresh Quest or the Related Entities. These superfluous claims are alleged as either: (1) violations of the Unfair Conduct provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499b(4) (the "PACA") (Counts I, II, IV, V, VI and VIII); or violations of Florida common law (Counts VII, IX, XIV and XV).

> A. **THE PACA CLAIMS AGAINST SHIELDS (COUNTS I, II, IV, V, VI and VIII) SHOULD BE DISMISSED BECAUSE FIDUCIARY VIOLATIONS CAN ONLY ARISE WITH RESPECT TO VIOLATIONS OF A PACA TRUST AND PLAINTIFF HAS NOT PROPERLY PLED ENTITLEMENT TO PACA TRUST PROTECTION.**

The allegations that Plaintiff asserts in its PACA Counts are the same as those used to support Plaintiff's breach of contract claim against Fresh Quest in Count III. As Shields was not a party to the Marketing Agreement, and thus cannot be sued for breach of contract, Plaintiff seeks damages from Shields through the following six PACA claims: (1) failing to properly account for the Produce transactions (Count I); (2) failing to promptly pay for the Produce (Count II); (3) breaching alleged fiduciary duties to Plaintiff (Count IV); (4) failing to truly and accurately account (Count V); (5) making false and misleading statements in connection with the Produce transactions (Count VI); and (6) not operating with good faith and fair dealing (Count VIII). *See generally* Compl. ¶¶ 179-192; 194-202; 237-259; 261-272; 283-288.

Plaintiff has sued Shields under the Unfair Conduct provisions of the PACA, 7 U.S.C. § 499b. This is because Plaintiff cannot utilize the powers provided under the provisions that establish the PACA Trust, 7 U.S.C. § 499e(c)(2), as those powers are granted only to sellers of produce that is sold on a short-term credit basis, which is defined in the statute's "full payment promptly" provision as requiring payment **no more than 30 days following receipt of the produce**. *See* 7 U.S.C. § 499b(4) (emphasis added). Here, and contrary to the PACA Trust

5

provisions, the Marketing Agreement allows Fresh Quest up to **45 days** after receipt of the Produce to make payment to Plaintiff. *See* Marketing Agreement, ¶7(a) (emphasis added).

Without the powers granted by the PACA Trust provisions, Plaintiff cannot seek payment from Shields because it is only those provisions that impose secondary liability on persons who are in a position to control the trust assets and fail to do so. *See Golman–Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000). "Therefore, if a seller of produce agrees to extend the time for payment more than thirty days following delivery and acceptance of the produce, the seller may no longer assert any right to a PACA trust or seek recovery from a principal of the buyer." *Bocchi Americas Assocs., Inc. v. Commerce Fresh Marketing*, 515 F.3d 383, 388 (5th Cir. 2008) (citing *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 206 n. 9 (3d Cir. 1998)).

As was previously stated, Plaintiff's PACA claims against Shields are all based on the "Unfair Conduct" provisions of PACA. Liability under the "Unfair Conduct" provisions of PACA is specifically limited to "commission merchants," "brokers" or "dealers" as defined by those provisions. Unlike the PACA Trust provisions, the Unfair Conduct provisions do not provide for secondary liability. As Plaintiff does not properly allege in the Complaint that Shields – as opposed to Fresh Quest - qualifies as a PACA "commission merchant," "broker" or "dealer," [2] he should be dismissed from Counts I, II, IV, V, VI and VIII.

---

[2] Although Plaintiff states in the Complaint that Shields is a "dealer" and a "broker" (*see* Compl., ¶¶ 9 & 10), these statements are merely legal conclusions couched as factual allegations. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Additionally, the Marketing Agreement, which is attached to the Complaint as Exhibit 1, contradicts any conclusion that Shields was a PACA dealer or broker. It is well settled that

**B.     THE STATE CLAIMS AGAINST SHIELDS (COUNTS VII, IX, XIV AND XV) SHOULD BE DISMISSED.**

Plaintiff asserts the following four common law causes of action against Shields: (1) Unjust Enrichment (Count VII); (2) Intentional Interference with Contract (Count IX); (3) conspiracy to defraud (Count XIV); and (4) aiding and abetting (Count XV). For the reasons that follow, all four of the causes of action should be dismissed.

**1.     <u>COUNT VII (UNJUST ENRICHMENT) SHOULD BE DISMISSED.</u>**

In Count VII, Plaintiff asserts the quasi-contract claim of unjust enrichment against Fresh Quest, the Related Entities and the six individuals who were employees, officers, directors and/or agents of Fresh Quest or the Related Entities. Perhaps the most fundamental basis for permitting a plaintiff to seek a quasi-contract claim is, at least in part, because the plaintiff lacks an express contract with the defendant. *See Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010). Where there is an express contract between the parties —as there is between Plaintiff and Fresh Quest — claims arising out of that contractual relationship will not support a claim for unjust enrichment, as the rights of the parties are governed by the contract that they entered into. *See Central Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F.Supp. 2d 1311, 1317 (S.D. Fla. 2011) ("As there is a valid express contract that no party challenges, Plaintiff may not recover under unjust enrichment, and may not assert it as an alternative claim under Federal Rule 18.").

---

"[w]here there is a conflict between allegations in a pleading and exhibits thereto . . . the exhibits control." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) (quoting *Simmons v. Peavy–Welsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir.1940)).

7

Furthermore, to establish a claim based on the theory of recovery for unjust enrichment, it must be shown that the plaintiff was the party who conferred the benefit on the defendant. *See Fito v. Attorney's Title Ins. Fund, Inc.*, 83 So. 3d 755, 758 (Fla. 3d DCA 2011). Indeed, the elements of an unjust enrichment claim are (1) a benefit conferred upon a defendant by the plaintiff; (2) the defendant's appreciation of the benefit; and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for the defendant to retain it without paying the value of the benefit. *See AMP Services Ltd. v. Walanpatrias Found.*, 73 So. 3d 346, 350 (Fla. 4th DCA 2011). If there is absolutely no relationship between the parties and the plaintiff has not conferred a direct benefit on the defendant, a claim for unjust enrichment will be dismissed. *See Extraordinary Title Servs., LLC v. Florida Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009).

In the instant case, the allegations of unjust enrichment against Shields arise solely out of the Marketing Agreement between Fresh Quest and Plaintiff. The Marketing Agreement, however, is not contested and is attached as an exhibit to the Complaint. As such, Plaintiff cannot plead in the alternative for unjust enrichment, and because the Complaint is bereft of any allegation that Plaintiff otherwise conferred a benefit on Sheilds, Plaintiff's unjust enrichment claim against Shelds must fail.

**2. <u>COUNT IX (INTENTIONAL INTERFERENCE WITH A CONTRACT) SHOULD BE DISMISSED.</u>**

In Count IX, Plaintiff attempts to allege a claim for tortious interference of the Marketing Agreement against Shields. *See* Compl. ¶¶ 289-293. "In order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract by influencing, inducing, or coercing one of the parties to breach the contract, thereby causing injury to the other party. An agent of a corporate party to a contract, acting within his

8

capacity and scope as an agent, cannot be considered to be a separate entity outside of the contractual relationship which can tortiously interfere with that relationship." *Cedar Hill Properties Corp. v. Eatern Federal Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991); *see also West v. Troelstrup*, 367 So. 2d 253, 255 (Fla. 1st DCA 1979); *Abruzzo v. Haller*, 603 So. 2d 1338, 1339-40 (Fla. 1st DCA 1992). The "interfering defendant must be a third party, a stranger to the business relationship." *Hyatt Corp. v. Epoch-Florida Capital Hotel Partners, Ltd.*, 2008 WL 490121, at *1 (M.D. Fla. Feb. 20, 2008) (citing *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1924 (11th Cir. 2001)).

Here, Plaintiff's sole allegation as it relates to Shields is that he allegedly "took actions intended to induce a breach or disruption of the contract." *See* Compl. ¶ 291. These actions are undefined, but in any event, because Shields is solely alleged to be an agent of Fresh Quest in this transaction, he is not a third party or stranger to the business relationship. As a result, Count IX of the Complaint for tortious interference must be dismissed as to Shields for failure to state a claim.

### 3. COUNT XIV (CONSPIRACY TO DEFRAUD) SHOULD BE DISMISSED.

Plaintiff's entire Complaint is premised on Fresh Quest's purported breach of the parties' Marketing Agreement. On the basis of these allegations, Plaintiff attempts to bring a conspiracy count against Shields in Count XIV of the Complaint based on a purported – yet undefined – conspiracy "to perform the tortious and other wrongful acts and schemes set forth in this complaint." *See* Compl. ¶ 315. However, Plaintiff's claim fails as a matter of law because principals of a company cannot conspire with their own company.

An action for conspiracy requires two or more persons (or entities) with a common purpose "seeking to accomplish an unlawful act or to accomplish a lawful act by unlawful

means." *Buckner v. Lower Florida Keys Hospital Dist.*, 403 So. 2d 1025, 1029 (Fla. 3d DCA 1981). Under the intracorporate conspiracy doctrine, "a corporation's officers, directors or employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Microsoft Corp. v. Big Boy Distribution* LLC, 589 F.Supp. 2d 1308, 1322 (S.D. Fla. 2008) (citing *Dickerson v. Alachua County Com'n,* 200 F.3d 761 (11th Cir. 2000). Here, Plaintiff's entire complaint is premised on actions that Fresh Quest and its alleged principals purportedly did in the course and scope of their employment. Dismissal is therefore warranted.

Additionally, Plaintiff's conspiracy claim also fails because conspiracy to breach a contract is not a recognized cause of action in Florida. "An actionable conspiracy requires an actionable underlying tort or wrong." *SFM Holdings, LTD, v. Banc of America Securities, LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014) (quoting *Raimi v. Furlong*, So. 2d 1273, 1284 (Fla. 3d DCA. 1997)). In other words, a valid cause of action for civil conspiracy only exists if "the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *Id.* (quoting *Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So. 2d 949, 951 (Fla. 3d DCA 1984)). A breach of contract claim does not constitute a sufficient basis for a cause of action in tort. *See Electronic Security Systems Corp. v. Southern Bell Telephone and Telegraph Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986).

Finally, to the extent that Plaintiff is alleging conspiracy to commit a fraud, Plaintiff has violated Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Plaintiff has not linked any fraudulent conduct to Shields, much less stated it with particularity. As such, any allegation based on fraud should be dismissed.

Therefore, Count XIV of the Complaint, which merely incorporates all of the Complaint's breach of contract allegations and does not otherwise identify what Fresh Quest's underlying independent tort or fraud is, should be dismissed.

### 4. COUNT XV (AIDING AND ABETTING) SHOULD BE DISMISSED.

In Count XV, Plaintiff alleges that the "Principals"[3] aided and abetted the breaches of fiduciary duties that were allegedly committed by Fresh Quest's officers and directors. To establish a claim for aiding and abetting a breach of fiduciary duty, "a plaintiff must allege: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012) (citations omitted).

With respect to the first element, Plaintiff failed to allege an underlying breach of fiduciary duty by Fresh Quest or its officers and directors. Accordingly, Plaintiff has not successfully pled the first element of a cause of action for aiding and abetting. With respect to the second and third elements, Plaintiff merely provides the bald allegations that Shields knew that Fresh Quest and its officers and directors were breaching their fiduciary duties (Compl. ¶ 319) and provided "substantial assistance and encouragement in their breaches of their fiduciary duties" (Compl. ¶ 319). There is no factual detail in the Complaint to support these statements. Therefore, Count XV of the Complaint should be dismissed as to Shields.

---

[3] Shields is one of the "Principals," as that term is defined in the Complaint. *See* Compl. ¶ 9.

### III. ALTERNATIVELY, PLAINTIFF SHOULD BE REQUIRED TO AMEND THE COMPLAINT TO STATE A MORE DEFINITE STATEMENT.

Finally, the Complaint as a whole is an impermissible "shotgun pleading" that violates Federal Rules of Civil Procedure 8(a) and 10(b) and does not allow Shields to prepare a proper responsive pleading. The Eleventh Circuit has continuously criticized the use of shotgun pleadings, and has outlined four categories the pleadings fall within. First, and most commonly, is the "complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Yahav Enter. LLC v. Beach Resorts Suites LLC*, 2016 WL 111361, at *2 (S.D. Fla. Jan. 11, 2016) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)). Second, is a complaint filled with "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* Third, "is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* Fourth, and relatively rare, is the assertion of "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* Here, Plaintiff is guilty of two of these shotgun approaches.

Plaintiff's Complaint falls under the first category detailed by the Eleventh Circuit because it contains fifteen counts and each count adopts the allegations of the preceding counts. This results in the adoption of over 300 counts in total. Plaintiff's Complaint also falls within the fourth category because it fails to specify which defendants are responsible for which acts and instead seeks relief against all defendants in each of its fifteen counts, irrespective of whether all or some of the defendants were alleged to have been involved in the actions giving rise to the claims. Therefore, Plaintiff should be required to amend the Complaint to provide a more

definite statement because it is an improper shotgun pleading that fails to provide Shields with adequate notice for the allegations against him.

## CONCLUSION

Based upon the foregoing, Counts I, II, IV, V, VI, VII, VIII, IX, XIV and XV of Plaintiff's Complaint should be dismissed as to Shields because those counts fail to state claims upon which relief can be granted. In the alternative, Shields' Motion for More Definite Statement should be granted because Plaintiff's vague allegations, which are incorporated into every count and which fail to specifically identify the defendant in question, do not provide Shields with adequate notice of the charges being brought against him.

WHEREFORE, Defendant Calvin K. Shields, respectfully requests that this Court issue an order (1) dismissing Calvin K. Shields from the Complaint or, in the alternative, requiring Plaintiff Exportadora Atlantico, S.A. to file a more definite statement in compliance with the directives of Fed.R.Civ.P. 12(e); and (2) awarding such additional relief as it deems just and proper.

Dated: December 12, 2016　　　　　　　　Respectfully submitted,

**CAREY RODRIGUEZ
MILIAN GONYA, LLP**

By: /s/ *Juan J. Rodriguez*
Juan J. Rodriguez, Esq.
Florida Bar No. 613843
Primary: jrodriguez@careyrodriguez.com
Secondary: lmejia@careyrodriguez.com
David M. Levine, Esq.
Florida Bar No. 84431
dlevine@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: 305-372-7474
Facsimile: 305-372-7475
*Attorneys for Defendant Calvin Shields*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 12, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Juan J. Rodriguez*
Juan J. Rodriguez, Esq.