**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Civil Action No.: 1:16-CV-23112-MGC

EXPORTADORA ATLANTICO, S.A.

       Plaintiff,

v.

FRESH QUEST,INC.,
XELA ENTERPRISES,LTD.,
TROPIC INTERNATIONAL,LTD.,
FRESH QUEST MELON, LLC,
AGROEXPORTADORA MUNDIAL, S.A.,
ALAN GUTTMAN, JUAN G. GUITERREZ,
MARK KOROL, JUAN A GUTIERREZ,
CALVIN K SHIELDS

       Defendants.

**PLAINTIFF'S OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS'
<u>CALVIN SHIELDS AND MARK KOROL'S MOTIONS TO DISMISS</u>**

Exportadora Atlantico, S.A. ("Exportadora" or "*Plaintiff*"), by and through its undersigned counsel, respectfully submits its opposition to both Calvin Shields' Motion to Dismiss [D.E. # 52] and Mark Korol's Motion to Dismiss [D.E. #55] and states as follows:

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997). In reviewing a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon v. Page*, 291 F.3d 485, 486–87 (7th Cir.2002). To survive a Rule

12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis but must also establish that the requested relief is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555.

Against this standard, taking as true all well-pleaded factual allegations and all reasonable inferences which may be drawn from those factual allegations, Defendant's motion to dismiss should be denied.

## ARGUMENT

I. **Contrary to Defendants' Assertions, Defendants are Each Personally Liable to Plaintiff for Violations of the Perishable Agricultural Commodities Act and More.**

   *A. PACA Liability Exists Even When No Trust is Established.*

Key to understanding and applying PACA is the fact that "PACA provides for both a damages remedy and (an entirely separate) trust remedy." *C&G Farms, Inc. v. Capstone Business Credit, LLC*, 2011 U.S. Dist. LEXIS 25986 *30-31 (citing 7 U.S.C. § 499e(a) and (b)). "Accordingly, certain conduct by commission merchants, dealers, or brokers is declared to be **unlawful**." *Id.* (citing 7 U.S.C. § 499b)(emphasis added). "Unlawful conduct subjects the violator to **damages**" (pursuant to 7 U.S.C. § 499b). *Id.* (citing 7 U.S.C. § 499e(a)('he shall be liable to the person or persons injured thereby for the full amount of the damages.')(emphasis added).

"The Damages remedy and the trust remedy are **distinct remedies**. The PACA damages provisions and the statutory trust are **different statutory schemes**. The PACA provisions for

unlawful conduct, pursuant to 7 U.S.C. § 499b, and the PACA provisions for a statutory trust, pursuant to 7 U.S.C. § 499e(c)(2), are **two different statutory schemes that do not apply to or interrelate to one another**." *Id.* (citing *Onions Etc., Inc. v. Z&S Fresh, Inc.*, 2010 U.S. Dist. LEXIS 64047 (E.D. Cal. 2010)(emphasis added). The foregoing is evidenced by, *inter alia*, the fact that Congress enacted PACA in 1930 to protect growers from unlawful conduct and to subject the violators to civil liabilities in the form of damages. Fifty-four years later, in 1984 Congress amended PACA to **add a new subsection** (c) to section 5.

Congress enacted the PACA in 1930 to provide a comprehensive scheme for the regulation of traders of fresh fruit and vegetables and

> to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in marketing of fresh and frozen fruits and vegetables . . . and providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations.

H. R. Rep. No. 543, 98th Cong. 2d Sess. 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. Stated another way, the PACA "provides a code of fair play . . . and an aid to agricultural traders in enforcing their contracts." 49 Fed. Reg. at 45737. The PACA makes it **unlawful** for produce buyers, *inter alia*, to:

- Fail to make full payment promptly for any produce they purchase.

- Fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such [produce purchase].

- Fail to maintain the trust as required under section 5(c) 7 U.S.C. § 499b(4).

- Fail to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation[1] of trust assets, is unlawful and in violation of section 2 of the Act, [7 U.S.C. 499b].

7 C.F.R. 46.46(d)(1)

---

[1] "'Dissipation' means any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).

Importantly, the foregoing represents four specific examples of **unlawful conduct** that violates PACA and subjects the violator to damages, which would be quantified utilizing, *inter alia*, the produce sellers' allegedly unpaid invoices.  However, these same PACA violations DO NOT constitute trust violations.  Rather, "if any commission merchant, dealer, or broker **violates any provision of section 2 [7 U.S.C. § 499b]** he shall be liable to the person or persons injured thereby for the full amount of the damages sustained in consequence of such violation.  Such liability may be enforced either (1) by complaint to the Secretary… or (2) by suit in any court of competent jurisdiction."  7 U.S.C. § 499e(a) and (b)(emphasis added).

In this case, neither Calvin Shields nor Mark Korol (individually each a "*Defendant*" and collectively "*Defendants*") argues that Fresh Quest, Inc. ("*Fresh Quest*" or "*FQI*") was not a dealer of perishable agricultural commodities ("*Produce*") and the holder of a USDA issued PACA license.  Rather, Defendants concede and admit to the same.  [D.E. #52, pg. 3] and [D.E. #55, pgs. 3 - 4]   Notwithstanding the above, Defendants argue that they do not personally qualify as a commission merchant, dealer, or broker of Produce, acted in their corporate capacity, and are due to be dismissed from the above styled civil action.  The Defendants' argument misstates the issue because the question is not whether the Defendants themselves qualify as a commission merchant, dealer, or broker of Produce, but rather whether the Defendants are personally liable to Plaintiff for the allegations, claims, and causes of action set forth in the Complaint [D.E. #1].

### B. Fresh Quest's Insolvency, Inter Alia, Establishes a Basis for Defendants' Personal Liability to Plaintiff.

Generally, an officer or director owes fiduciary duties exclusively to the corporation's shareholders. When a corporation becomes insolvent, however, the officer or director's fiduciary duties shift to the creditors of the corporation. *Guaranty Trust & Savings Bank v. United States*

*Trust Co.,* 89 Fla. 324, 103 So. 620, 622 (1925) ["The directors ... of an insolvent corporation occupy toward the creditors of the corporation a fiduciary relation ...."]. *See also Federal Deposit *167 Insurance Corp. v. Sea Pines Co.,* 692 F.2d 973, 976–77 (4th Cir.1982) [when a corporation becomes insolvent, "the fiduciary duty of the directors shifts from the stockholders to creditors"]; *Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims (In re Papercraft Corp.),* 211 B.R. 813, 824 (W.D.Pa.1997) [upon insolvency fiduciary duty of insider extended to creditors]; *Brandt v. Hicks, Muse & Co. (In re Healthco International, Inc.),* 208 B.R. 288, 300 (Bankr.D.Mass.1997) ["When a transaction renders a corporation insolvent, or brings it to the brink of insolvency, the rights of creditors become paramount."]; *Geyer v. Ingersoll Publications Co.,* 621 A.2d 784, 787–88 (Del.Ch.1992) ["[T]he fact of insolvency ... causes the duty to creditors [to] arise"]. The shift in fiduciary duties from the shareholders to the creditors that occurs upon the insolvency of the corporation is sometimes referred to as the "insolvency exception."

Under applicable Florida corporate law, a director must perform his or her corporate duties (1) in good faith; (2) with such care as an ordinary prudent person in a like position would exercise under similar circumstances; and (3) in a manner the director reasonably believes to be in the best interests of the corporation. *In re Trafford Distrib. Ctr., Inc.*, 431 B.R. 263, 290 (Bankr. S.D. Fla. 2010). Under Florida law, corporate officers and directors owe duties of loyalty and a duty of care to the corporation. *Id*. **The fiduciary duties of officers and directors are extended to the creditors of a corporation when the corporation becomes insolvent or is in the "vicinity of insolvency."** *(emphasis added).* To permit corporate officers and director "to use their fiduciary positions to obtain preferential treatment at the expense of third-party creditors is manifestly unfair." *Id.* As a result, "[a] corporate officer or director breaches the

duty of loyalty if that person 'depart[s] from his corporate responsibility and start[s] serving himself.' " *Id.* A fiduciary who commits a breach of her duty as a fiduciary is guilty of tortious conduct, and the wronged party is entitled to tort damages for harm caused by the breach of duty. *Id.*

Florida law has long recognized that corporate officers and directors owe duties of loyalty and a duty of care to the corporation. *See Cohen v. Hattaway,* 595 So.2d 105 (Fla. 5th Dist.Ct.App.1992); *B & J Holding Corp. v. Weiss,* 353 So.2d 141 (Fla. 3rd Dist.Ct.App.1978). **An officer's or director's fiduciary duties are extended to the creditors of a corporation when the corporation becomes insolvent or is in the "vicinity of insolvency".** *See Toy King Distributors, Inc.,* 256 B.R. 1 (Bankr.M.D.Fla.2000) (emphasis added). A corporate officer or director breaches the duty of loyalty if that person "depart[s] from his corporate responsibility and start[s] serving himself." *Intercarga Internacional de Carga, S.A. v. Harper Group, Inc.,* 659 So.2d 1208, 1210 (Fla. 3rd Dist.Ct.App.1995).

Via Declaration of Mark Korol, CFO for Fresh Quest, Inc., dated June 22, 2016 and filed in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade Country, Florida in case number 2015-025844-CA-24, Fresh Quest admitted and affirmed the following, in relevant part, under penalty of perjury:

> During Mr. Guttman's tenure as President of FQI since 2012, the company and its operating divisions indirectly lost over $10 million. Due to his gross mismanagement, FQI missed every single budget and was exposed to substantial third party liability, including liability to suppliers for his mishandling of trust fund proceeds under the Perishable Agricultural Commodities Act ("PACA"). Indeed, because of this mishandling, he was very concerned about his own potential individual liability under PACA. As such, there is no doubt Mr. Guttman knew that as of mid-October 2015, **FQI was insolvent**, that he was directly responsible for creating this insolvency….

*See* Declaration of Mark Korol at ¶ 8 (emphasis added), [D.E. #27-1]. In light of the above, there is no question that at all time relevant Fresh Quest was insolvent and this fact was known to

both Defendants and others within the organization. Fresh Quest's insolvency alone required Defendants to exercise due care in the supervision and management of the company and the performance of their duties for the benefit of Fresh Quest's creditors, such as Plaintiff herein. *See Fla. Stat.* § 607.0830(1). This fact is bolstered by the former CEO's – Alan Guttmann - admission that "a corporation can only act through its agents" [D.E. # 16, pg. 4] and that he was the "President and employee" of Fresh Quest. [D.E. # 16, pg. 7]. Similarly, Mark Korol admitted that he was formerly the Chief Financial Officer of Fresh Quest, Inc. [D.E. #27-1, ¶ 1].

## II.     Plaintiff Properly Included Defendants as a Party to the Above Styled Case

Plaintiff invested the time and effort into preparing a 57 page detailed complaint with 322 separate allegations providing great detail about Defendants': (i) role in this case, (ii) position within Fresh Quest, (iii) relationship with Plaintiff, and; (iv) the various duties and obligations of the parties hereto. There is nothing threadbare about Plaintiff's allegations against either Defendant. Indeed, even the Defendants do not argue that Plaintiff's Complaint failed to properly place them on fair notice regarding Plaintiff's claims, but rather appears to challenge only the plausibility of any of the claims contained in the Complaint attaching to the Defendants personally.

Again, Defendants are wrong. Fresh Quest's admitted insolvency (e.g., the company lost $10 million dollars due to gross mismanagement and Defendants knew the company was insolvent. *See* D.E.# 27, Exhibit A) coupled with the fact that Mark Korol served as the Chief Financial Officer of Fresh Quest, was directly involved in the hiring and firing of Alan Guttmann, former president of Fresh Quest, Inc., executed the affidavit used against Alan Guttmann on behalf of Fresh Quest, Inc., and testified to Fresh Quest's insolvency places Defendant in a vulnerable position. Calvin Shields served as a director of Fresh Quest and, as

such, was also aware of its insolvency. Stated another way, the Defendants cannot grossly mismanage Fresh Quest to the point of insolvency and then seek to avoid any liability to its creditors, such as Plaintiff herein, by hiding behind the very entity they lead to ruin, selling the remains of the insolvent company, and citing nothing more than generic principles of law to this Court in an effort to avoid any personal liability. The foregoing ignores well established Florida law and jurisprudence.

As set forth in the Complaint, Defendants were personally involved in or were otherwise responsible for every alleged breach of contract, breach of statutory duty, breach of fiduciary duty, and tort injury suffered by Plaintiff as alleged in Counts 1, 2, 4, 5, 6, 7, 8, 9, 14 and 15 of the Complaint. Armed with knowledge of Fresh Quest's actual insolvency and prior pending insolvency (i.e., vicinity of insolvency), the Defendants each owed Plaintiff a duty of loyalty and stood in a fiduciary capacity with respect to Plaintiff. As a fiduciary of Plaintiff, each of the Defendants is absolutely a proper party to the above styled civil action and Florida law is very clear that the fiduciary duties of officers to their corporations are extended to creditors of insolvent corporations.

As a direct result of the above, it is more than plausible that each of the Defendants is in fact personally liable to Plaintiff for the claims, injuries, and damages alleged in Counts 1, 2, 4, 5, 6, 7, 8, 9, 14 and 15 of the Complaint. Moreover, this Honorable Court should not permit the Defendants to grossly mismanage Fresh Quest to the point of insolvency and avoid any personal responsibility to those creditors they jointly and severally victimized. More than enough facts exist to fairly place Defendants on notice of the claims against them and Fresh Quest's admitted insolvency makes it more than plausible that Defendants are in fact personally liable to Plaintiff. Because almost all of the Defendants' challenges to Plaintiff's Complaint are based on the

assumption that the Defendants owe no duties to Plaintiff they each must fail under a motion to dismiss standard.

### III. Plaintiff Properly Structured its Complaint in the Above Styled Case

Contrary to Defendants' self-serving classification of Plaintiff's Complaint as a "shotgun pleading" approach to the instant litigation, Plaintiff's seeks to impose personal liability upon the Defendants for, *inter alia*, the actions and inactions of the insolvent entity – Fresh Quest, Inc. – which the Defendants controlled as officers, directors, or shareholders.  As such, Plaintiff's allegations against the Fresh Quest, Inc. and its related and affiliated entities must be laid out in order to comply with the notice pleading standard set forth in the Federal Rules of Civil Procedure.  The foregoing is also critical in developing Plaintiff's claims against the individual Defendants.

It is disingenuous for the Defendants to cry foul and attempt to elevate an alleged technical violation beyond its intended purpose in order to avoid personal responsibility for the action and inactions of the corporate defendants they controlled.  The reality is that Plaintiff's Complaint fully complied with the pleading standards set forth in the Federal Rules and the Defendants, as well as their counsel, knew of Plaintiff's allegations wells before the Complaint was filed in this case.

### IV. Plaintiff Concedes that Mark Korol was not Personally Served.

Plaintiff concedes that Mark Korol was not personally served.  Subsequent to Mr. Korol's initial service and the filing of his Motion to Dismiss [D.E. # 55], Plaintiff investigated Mr. Korol's claims of not being served and found them to be accurate.  Specifically, Plaintiff contacted the Mark Korol that was personally served in Florida and has satisfied itself that Plaintiff served the wrong Mark Korol (i.e., a gentleman named Mark Korol was in fact served

as set forth in the return of service, but that Mark Korol turned out not to be the intended service recipient).

Notwithstanding the above, this Honorable Court should deem Mr. Korol's Motion to Dismiss [D.E. # 55] as his submission to the jurisdiction of this Honorable Court.  Mr. Korol appears to have no problem filing affidavits with Florida Courts [D.E. #27] in furtherance of the business affairs of the insolvent Fresh Quest, Inc., but now wishes to hide in Canada in an attempt to avoid such courts when it is he whose actions or inactions are called into question.

**WHEREFORE**, Plaintiff respectfully requests Defendants' Motions to Dismiss [D.E. #52] and [D.E. #55] be denied in their entirety or in the alternative, Plaintiff should be permitted leave to amend its Complaint to address any deficiencies the Court believes need to be addressed.

Dated:  December 27, 2016                     Respectfully submitted,

                                                 **EXPORTADORA ATLANTICO, S.A.**

                                                 /**s**/ Drew M. Dillworth, Esq.

                                                 STEARNS WEAVER MILLER et al.
                                                 150 West Flagler Street
                                                 Suite 2200
                                                 Miami, Florida 33130
                                                 Telephone: (305) 789-3598

**Of Counsel:**                              Facsimile: (305) 789-3395
                                                 E-mail: ddillworth@stearnsweaver.com

Jason R. Klinowski, Esq.
   (*Pro Hac Vice* application forthcoming)
WALLACE JORDAN RATLIFF & BRANDT
First Commercial Bank Building
800 Shades Creek Parkway, Suite 300
Birmingham, Alabama 35209
Telephone:  (205) 874-0371
Facsimile:   (205) 874-3287
E-mail: jklinowski@wallacejordan.com

## CERTIFICATE OF SERVICE

   I hereby certify that on December 27, 2016, the undersigned counsel for the Plaintiff caused the this document to be filed electronically via the Court's CM/ECF website, and further, caused a true and correct copy of the foregoing, including all notices and exhibits thereto, if any, to be served upon all counsel of record, via the Court's CM/ECF system.

               /s/ Drew M. Dillworth, Esq.

               STEARNS WEAVER MILLER et al.
               150 West Flagler Street
               Suite 2200
               Miami, Florida 33130
               Telephone: (305) 789-3598
               Facsimile: (305) 789-3395
               E-mail: ddillworth@stearnsweaver.com

               *Local Counsel for the Plaintiff*